## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Team Biondi, LLC, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| Navistar, Inc. | : | |
| | : | |
| and | : | |
| | : | |
| Philadelphia Used Truck Center | : | NO: 3:17-CV-2294 |
| | : | |
| and | : | |
| | : | |
| John Doe (1) | : | |
| | : | |
| and | : | |
| | : | |
| John Doe (2), | : | |
| Defendants | : | |

### PLAINTIFF'S AMENDED COMPLAINT

**NOW COMES** TEAM BIONDI, LLC., (hereinafter, "Plaintiff") and complains of Navistar, Inc. (hereinafter, "Defendant"), and for cause of action would respectfully show unto the Court as follows:

### I.

### PARTIES AND JURISDICTION

1.      Plaintiff is a limited liability company incorporated under the Laws of Pennsylvania with their principal offices located at 248 Easton Turnpike, Lake Ariel, PA 18346.

2.      Defendant Navistar, Inc., (hereinafter referred to "Navistar") is incorporated under the laws of Delaware, with its principal office in Illinois.

3.      Defendant, Philadelphia Used Truck Center, Inc. (hereinafter referred to as "Truck Center") is on information and belief a Pennsylvania Corporation with its principal offices at 8800 State Road, Philadelphia, PA 19136.

4.      Defendant, John Doe (1), is an agent, servant and/or employee of both Defendants named in this action, whose identity will be revealed through discovery.

1

5.     Defendant, John Doe (2), is an agent, servant and/or employee of both Defendants named in this action, whose identity will be revealed through discovery.

6.     Jurisdiction is proper in this Court in that the events giving rise to the causes of action contained in this complaint occurred in Lackawanna County.

7.      The subject matter in controversy is within the jurisdictional limits of this court. This court has jurisdiction over the parties because all Defendants do business in the State of Pennsylvania.

## II.

## FACTUAL BACKGROUND

8.     Plaintiff is a logistics company and owner of a commercial Trucking fleet and is engaged in the business of hauling commodities across 48 states.

9.     Navistar is a Delaware corporation that manufactures Trucks and other equipment.

10.     Navistar manufactures International brand ("International") heavy-duty commercial Trucks and MaxxForce brand ("MaxxForce") diesel engines.

11.     Truck Center is an authorized dealer and Pennsylvania company that sells and services Navistar Trucks and equipment including International trucks and MaxxForce diesel engines and on information and belief, acts as an agent for Navistar, Inc.

12.     Navistar provides a package of goods and services to buyers of International Trucks with MaxxForce engines by distributing their products through a nationwide network of authorized dealers (the "Navistar Network").

13.     Authorized dealers in the Navistar Network - such as Truck Center - act as agents for Defendants in connection with the purchase and service of International Trucks with MaxxForce engines.

14.     Upon information and belief, dealers in the Navistar Network rely almost exclusively on materials and training received from Defendants when making representations and International Trucks and MaxxForce engines to their customers.

15.     Defendants regularly provide authorized dealers with International and MAxxForce branded literature, signage, and training materials for use in promoting, selling and financing the purchase of their Trucks to customers.

16.     In addition, Defendants routinely hold training seminars for authorized dealers in the Navistar Network.

17.     During these seminars, Defendants coach dealer in the Navistar Network and their sales staff on the best ways to sell International Trucks to customer, including providing detailed comparisons of competing manufacturers' products and outlining the specific information dealers should emphasize when pursuing a sale.

18.     In areas where they lack knowledge, dealers in the Navistar Network are encouraged to visit Navistar's website for additional information.

19.     Potential Navistar customers are also encouraged to visit Navistar's website when seeking information about International Trucks and the MaxxForce engines.

20.     Navistar's website contains informational materials and statements to aid dealers and induce the customer to purchase Defendant's products.

21.     In addition, Defendants furnish the actual specifications of each Truck, including fuel efficiency information, rather than relying on the dealers to generate those details for customers interested in purchasing International Trucks.

22.     Upon information and belief, Defendants intend for dealers in the Navistar Network to rely almost exclusively on information provided by Defendants when making representations to potential customers and inducing customers to purchase International Trucks with MaxxForce engines.

23.     The 13 vehicles containing Navistar engines are as follows:

| **Make** | **VIN** | **Date of Title** |
|---|---|---|
| 1. International | 3HSCWSJR6AN272136 | 04/23/2012 |
| 2. International | 3HSCXSJR5DN150613 | 11/20/2015 |
| 3. International | 3HSCXSJR7DN150614 | 11/18/2015 |
| 4. International | 3HSCXSJR9DN150615 | 11/18/2015 |
| 5. International | 3HSCXSJRXDN150610 | 11/18/2015 |

3

| | | |
|---|---|---|
| 6. International | 3HSDJSJR4DN197072 | 11/18/2015 |
| 7. International | 3HSDJSJR4DN197119 | 12/30/2015 |
| 8. International | 3HSDJSJR0DN171312 | 04/08/2015 |
| 9. International | 3HSDJSJR0DN1711214 | 04/10/2015 |
| 10. International | 3HSDJSJR7DN171209 | 04/08/2015 |
| 11. International | 3HSDJSJR5DN171192 | 04/08/2015 |
| 12. International | 3HSDJSJR7DN168388 | 12/08/2015 |
| 13. International | 3HSDJSJR1DN198521 | 04/08/2015 |

24.     At the time of purchase, the subject semi-Trucks were warranted by Defendant Navistar, both expressly in writing, and orally by Defendants' agents and representatives, to be free from defects in design, material, and workmanship. At the time of purchase, Navistar's agents and representatives assured Plaintiff that the Trucks were in perfect working order and without defects.

25.     At diverse times, John Doe (1), a salesman for both Defendants, expressed both in writing and orally, that the subject vehicles were warranted and free from defects in design, material and workmanship. At the time of purchase, John Doe (1) assured Plaintiff that the trucks were in perfect working order and without defects.

26.     However, not long after the purchase of the Trucks Plaintiff began to experience numerous breakdowns of its Trucks, specifically the EGR system, EGR coolers, EGR valves, and other components of the Trucks and engines. Defendant Truck Center was an agent for Navistar and assisted in the repairs of the Trucks.

27.     Subsequently, Plaintiff semi-Trucks went into service shops, including Defendant Truck Center, to repair problems directly related to these systems and components.

28.     Despite numerous attempts to correct the semi-Trucks problems by Defendants Navistar and Truck Center, Defendants have failed to adequately correct the problems.

29.     Plaintiff was led to believe that each repair or remedy would solve the defect; however, Plaintiff's Trucks continued to be defective.

## Defendant's Representations

30.     Defendants, through their agents, servants and employees John Doe (1) and John Doe (2) and through advertising materials and public statements in trade magazines, repeatedly made representations concerning their unique exhaust gas recirculation ("EGR") emission system on the MaxxForce 13-litre engine.

31.     Defendants, through John Doe (1) and John Doe (2), through advertising materials and public statements in trade magazines, repeatedly made representations concerning their unique exhaust gas recirculation ("EGR") emission system on the MaxxForce 13-litre engine as hereinafter described more fully.

32.     According to representations made to Plaintiff, Defendants' proprietary EGR system was purportedly certified under Environmental Protection Agency's ("EPA") 2010 emission standards for use of heavy-duty commercial Trucks.

33.     Based on their public statements and press releases, it appeared that Defendants were attempting to distinguish themselves from competitors by becoming the only heavy-duty Trucks manufacturer in North America to rely entirely on EGR to meet the EPA 2010 emissions standards.

34.     Defendants' EGR system recirculates the exhaust gas produced by the engine back into the engine to be re-combusted.

35.     Other heavy-duty commercial Trucks manufacturers in North America use a combination of EGR and selective catalytic reduction ("SCR"), which requires injecting a chemical after-treatment - a urea based compound known as DEF - into the exhaust gas once it leaves the engine, thereby neutralizing and/or reducing harmful emissions.

36.     Defendants were the only manufacturer of heavy-duty commercial Trucks in North America that relied entirely on EGR to meet EPA standards.

37.     According to representations made by Defendants, the EGR system purportedly provides better "fluid economy" than other brands' combination SCR systems because EGR does not require the use of an after-treatment to neutralize harmful emissions- an additional operating cost that each fleet owner or Trucks driver would have to bear.

38.     As a result, Defendants represented that the MaxxForce ProStars deliver the "lowest cost of ownership in the industry."

39.     Defendant Navistar also represented that its engines had met the EPA 2010 emissions standards of .2g NOx and were the only heavy-duty engine manufacturer able to do so inside the cylinder.

40.     However, based upon information and belief, Defendant Navistar engines never reached the EPA 2010 emissions .2g NOx standards threshold and Defendant Navistar knew that the engines were never going to meet this requirement using EGR only technology.

41.     Additionally, as discussed below, Defendants' EGR system was flawed and became one of the most significant and consistent problems with the Trucks.

42.     Throughout the course of negotiations, and through advertising materials and trade magazines reviewed by the Plaintiffs, Defendants made several other representations (in addition to those stated elsewhere in this Complaint) to Plaintiff that proved to be untrue, including by not limited to the following:

5

    a.    Defendants' salespersons told Plaintiff that Defendants had solved the quality problems with the 2010 Year Model MaxxForce EGR-only engines with subsequent changes to 2011, 2012, and 2013 models;

    b.    Defendants' salespersons told Plaintiff that the EGR technology was EPA-compliant; and

    c.    Defendants' salespersons told Plaintiff that the changes in technology from the 2010 Year Model to the 2012 Year Model would eliminate the high breakdown rates of the trucks.

43.    Defendants assured Plaintiff that the Trucks were free from defects and suitable to perform the duties for which it was manufactured.

44.    However, if Plaintiff did experience problems with the Trucks' operation, Defendants assured Plaintiff that the expansive Navistar Network would make its certified technicians and quality parts available if repairs were necessary.

45.    Defendants further represented to Plaintiff that all authorized dealers in the Navistar Network have MaxxForce ProStar certified technicians on staff and available at all times.

46.    Defendants represented to Plaintiff that MaxxForce Prostars are designed and built to MaxxForce ProStars are designed and built to maximize uptime, minimize downtime, and be "always performing."

47.    Defendants represented that MaxxForce ProStars had millions of miles of actual road testing and years of simulated testing to provide road-ready Trucks from the day of purchase.

48.    Navistar claimed this testing had solved any serious issues or defects with the design, the components, the materials, and the workmanship of the system prior to officially launching the vehicle in 2010.

49.    John Doe (1) and John Doe (2), acting as Defendants' agent, relayed much of the above-described representations directly to Plaintiff. This information was also relayed in advertising materials and trade magazine interviews with Navistar employees.

50.    Upon information and belief, Plaintiff asserts that Defendant Navistar made the above representations either directly or through Truck Center, with the intention of inducing Plaintiff to purchase the Trucks.

51.    According to their public figures, Defendants spend close to $30 million per year on advertising intended to reach customers and induce them to purchase Defendants' products.

52.    Persuaded by Defendant's representations reflected herein, Plaintiff purchased the Trucks and agreed to incur debt owed on the new Trucks.

53.    Upon information and belief, one of the most significant problems with Defendant's EGR system is that the continuous recirculation of exhaust gas back into the engine reduces the engine's efficiency causes soot, which all adversely affect the components of the EGR system and engine. The material used in the EGR

system and engine was not able to withstand excessive soot and heat. The workmanship failed to provide an EGR system and engine that could handle excessive heat and soot. The design of the EGR system could not handle the excessive heat and soot.

54.     Plaintiff was repeatedly forced to take the Trucks into the Navistar Network for repairs due to indications that the engine was overheating, heating and various components were clogged.

55.     Over the years that Plaintiff owned the Trucks, the Trucks were in the shop for warrantied repairs on hundreds of separate occasions, not including other routine maintenance required for commercial heavy-duty trucks.

56.     The problems Plaintiff owned the Trucks, the Trucks were in the shop for warrantied repairs included, but are not limited to:

    a.     Repeated instances of check engine lights illuminating;

    b.     Engine derating;

    c.     EGR system failure, including but not limited to:

        i.     EGR sensor failure;

        ii.     full replacement of the EGR valve and cooler system;

        iii.     cooling system failures causing the engine to overheat;

        iv.     other problems or failures specifically related to the EGR system;

        v.     EGR plugging;

        vi.     EGR cracking/leaking;

        vii.     EGR valve problems;

        viii.     Turbo failures; and

        ix.     Need for recalibration

    d.     Fuel pump failures;

    e.     A/C blower and compressor failures;

    f.     Hoses and connections becoming clogged or prematurely worn;

    g.     Other issues that prevented the Trucks from functioning as warranted.


57.     To compound the problem, Plaintiff was repeatedly delayed in getting the Trucks back into operation after they had been in the shop for maintenance and/or repairs, by Defendants' inability or unwillingness to promptly provide certified technicians and necessary parts at service locations in the Navistar Network.

58.     Defendants, through John Doe (2), on information and belief, a service manager employed by Defendants, repeatedly assured Plaintiff that the problems could be corrected.

59.     Based upon information and belief, on many occasions, the parts needed to complete the repairs to Plaintiffs trucks were on national back order and/or unavailable which contributed to the substantial delays in the repairs.

60.     In fact, on several occasion Plaintiff was forced to wait days for necessary repairs.

61.     Due to the Truck's demonstrated lack of utility, its failures to meet – much less exceed – the reliability and performance criteria described in the representations made at the time of purchase and the exceedingly large amount of downtime for repairs, Plaintiff was forced to trade-in a number of Trucks.

## Defendants Knowledge of Problems with MaxxForce ProStars and MaxxForce engines

62.     Upon information and belief, prior to Plaintiff' purchase of the Trucks, Defendants became aware that the MaxxForce ProStar Trucks line was woefully inadequate for public distribution.

63.     According to industry standards, heavy-duty commercial Trucks engines require extensive testing for years before public distribution in order to work out any issues with design, material defects and/or workmanship.

64.     Manufacturers of heavy-duty commercial Trucks engines run the engines in controlled conditions for thousands of hours in order to simulate actual driving conditions. Manufacturers are also required to run extensive field or "real world" testing.

65.     As a result of this extensive testing, manufacturers obtain large amounts of data regarding problems associated with the engine performance.

66.     Upon information and belief, Defendants were able to accurately predict the exact types of problems that would occur with MaxxForce engines.

67.     Upon information and belief, Defendants knew that the MaxxForce PRoStars had significant and documented problems associated with the MaxxForce engines and concealed this information from the public and Plaintiff.

68.     Further, upon information and belief, Defendant did not adequately and thoroughly test its engines prior to release.

69.     Upon information and belief, Defendant Navistar knew that the MaxxForce engines never met the .2g NOx threshold in a commercially viable "real world" setting, and never would and concealed this information from the public and Plaintiff.

70.     Upon information and belief, Defendant Navistar knew as early as 2010 that its EGR-only technology was "still maturing" and concealed this information from the public and Plaintiff.

71.     Upon information and belief, Defendant Navistar knew that by mid-2011 the MaxxForce engines were experiencing significant warranty claims increases and concealed this information from the public and Plaintiff.

8

72.     Upon information and belief, Defendant Navistar knew that it was only able to sell MaxxForce engines using "banked" emissions credits and concealed this information from the public and Plaintiff.

73.     However, in February 2012, Defendant Navistar ran out of "banked" emissions credits and was notified by the EPA that it would be fined as much as $37,500 per violation, or up to $487,500.00, for shipping thousands of back-dated engines during the 2010 engine transition.

74.     Nevertheless, upon information and belief, Defendants proceeded to manufacture and distribute the MaxxForce ProStars while continuing to make false representations to the public and to Plaintiff regarding the performance capabilities, reliability, EPA certification, and Defendant Navistar's commitment to the MaxxForce engine that Defendant knew to be false.

75.     Finally, in July of 2012, Defendant's made a public announcement they were no longer going to produce 11-liter and 13-liter engines with EGR-only systems, but rather they would be switching to combination SCR systems. Defendants also announced that they were ceasing production entirely on their EGR- only 15-liter engines.

76.     As a result of the above-described acts and/or omissions, Plaintiff was forced to see a number of the 2012 Trucks and also institute this legal proceeding to recover for their injuries resulting from the Defendants' breach of contract, fraud, and conspiracy in connection with the purchase of Trucks.

77.     As a direct and proximate result of Defendants' above-described conduct, Plaintiff suffered financial loss and other damages within the jurisdictional allowances of this Court, including, but not limited to:

      a.     Loss of profits;

      b.     Downtime expenses and losses;

      c.     Diminished resale value of the Trucks;

      d.     Out-of-Pocket repair expenses;

      e.     Fuel expenses incurred in excess of the represented amounts;

      f.     Towing expenses;

      g.     Lodging expenses for Plaintiff's drivers;

      h.     Rental car expenses, including fuel for the same;

      i.     Unreimbursed driver downtime;

      j.     Loss of revenue; and

      k.     Other economic, financial, consequential and incidental damages allowed by law or equity.

### III. CAUSES OF ACTION

78.     Plaintiff incorporates paragraphs 1-77 as though fully set forth herein.

**BREACH OF EXPRESS WARRANTY**

79.     Plaintiff brings a cause of action for breach of an express warranty against Defendant Navistar, through its agents, servants and/or employees including John Doe (1) and John Doe (2), for representing to Plaintiff that the Trucks were of a particular quality when, in fact, they were not.

80.     Defendant produced and manufactured the Trucks, which was ultimately sold to Plaintiff.

81.     During the negotiations leading up to purchasing the Trucks, Defendant made the above-described representations through its agent to Plaintiff.

82.     Defendant expressly assured Plaintiff that the Trucks were free from defects and were suitable to perform the duties for which they were manufactured and sold.

83.     Defendant expressly assured Plaintiff they had an extensive network of service centers that would promptly provide parts and trained technicians needed to fix any problems experienced by Plaintiff with the Trucks.

84.     Plaintiff relied on the above-described representations from Defendant in making its decision to purchase the Trucks.

85.     Plaintiff repeatedly notified Defendants and their agents of the defects related to the Trucks and their MaxxForce engines, but Defendants failed and/or refused to make repairs sufficient to correct the defects.

86.     As a proximate result of Defendants' breach of express warranty (all warranties provided to Plaintiff at any time by Navistar), Plaintiff has suffered financial loss and other damages within the jurisdictional allowances of this Court, including, but not limited to:

      a.     Loss of profits;

      b.     Downtime expenses and losses;

      c.     Diminished resale value of the Trucks;

      d.     Out-of-Pocket repair expenses;

      e.     Fuel expenses incurred in excess of the represented amounts;

      f.     Towing expenses;

      g.     Lodging expenses;

      h.     Rental car expenses, including fuel for the same;

      i.     Unreimbursed driver downtime;

      j.     Loss of revenue; and

      k.     Other economic, financial, consequential and incidental damages allowed by law or equity.

## BREACH OF IMPLIED WARRANTY

87.     In addition, or in the alternative, Plaintiff brings a cause of action for breach of an implied warranty against Defendants, by and through their agents, servants and/or employees John Doe (1) and John Doe (2), for representing to Plaintiff that the Trucks were of a particular quality when, in fact, they were not.

88.     Defendant produced and manufactured the Trucks, which were ultimately sold to Plaintiff.

89.     During the negotiations leading up to purchasing the Trucks, Defendant through its agent made the above-described representations to Plaintiff.

90.     Defendant impliedly assured Plaintiff that the Trucks were free from defects and were suitable to perform the duties for which they were manufactured and sold.

91.     Further, Defendant impliedly assured Plaintiff that the Trucks were merchantable.

92.     Plaintiff ultimately discovered that the Trucks were not merchantable and had significant problems, as discussed above, and including, but not limited to:

    a.     Repeated instances of check engine lights illuminating;

    b.     Engine derating;

    c.     EGR system failure, including but not limited to:

        i.     EGR sensor failure;

        ii.     full replacement of the EGR valve and cooler system;

        iii.     cooling system failures causing the engine to overheat;

        iv.     other problems or failures specifically related to the EGR system;

        v.     EGR plugging;

        vi.     EGR cracking/leaking;

        vii.     EGR valve problems;

        viii.     Turbo failures; and

        ix.     Need for recalibration

    d.     Boost control solenoid failing;

    e.     Retarder control valve leaking;

    f.     Hoses and connections becoming clogged or prematurely worn;

    g.     Reduced fuel efficiency; and

    h.     Other issues that prevented the Trucks from functioning as warranted.

93.     Plaintiff relied on the above-described representations from Defendants in making its decision to purchase the Trucks.

94.     Plaintiff repeatedly notified Defendants of the defects related to the Trucks and their MaxxForce engines, but Defendants failed and/or refused to make repairs sufficient to correct the defects.

95.      As a proximate result of Defendants' breach of warranty, Plaintiff has suffered financial loss and other damages within the jurisdictional allowances of this Court, including, but not limited to:

      a.      Loss of profits;

      b.      Downtime expenses and losses;

      c.      Diminished resale value on the Trucks;

      d.      Out-of-pocket expenses;

      e.      Fuel expenses incurred in excess of the represented amounts;

      f.      Towing expenses;

      g.      Lodging expenses;

      h.      Rental car expenses, including fuel for the same;

      i.      Unreimbursed driver downtime;

      j.      Loss of revenue; and

      k.      Other economic, financial, consequential and incidental damages allowed by law or equity.

## BREACH OF CONTRACT

96.      In addition, or in the alternative, Plaintiff brings a cause of action for breach of contract against Defendants in that Defendants failed to provide Trucks free from defects in accordance with the terms of the agreement.

97.      Plaintiff entered into a valid, enforceable contract with Truck Center, which is an agent of Defendants and is authorized to act on Defendants' behalf in selling International Trucks.

98.      The aforementioned contract obligated Plaintiff to buy and Defendant Navistar to provide the Trucks free from defects (the "Agreement").

99.      Plaintiff performed their contractual obligations by purchasing the Trucks.

100.      Defendants breached the Agreement by failing to provide Trucks that were free from defects in accordance with the terms of the Agreement.

101.      As a proximate result of Defendant's breach of the Agreement, Plaintiff has suffered financial loss and other damages within the jurisdictional allowances of this Court, including, but not limited to:

      a.      Loss of profits;

      b.      Downtime expenses and losses;

      c.      Diminished resale value on the Trucks;

      d.      Out-of-pocket repair expenses;

      e.      Fuel expenses incurred in excess of the represented amounts;

      f.      Towing expenses;

g.      Lodging expenses;

h.      Rental car expenses, including fuel for the same;

i.      Unreimbursed driver downtime;

j.      Loss of revenue; and

k.      Other economic, financial, consequential, and incidental damages allowed
        by law or equity.

## FRAUD

102.      In addition, or in the alternative, Plaintiff brings a cause of action for fraud against Defendants, by and through their agents, servants and/or employees John Doe (1) and John Doe (2), for knowingly making false representations of material fact to Plaintiff in connection with the purchase of the Trucks. All previous paragraphs are incorporated as if fully set forth herein in this section related to Plaintiff's cause of action of fraud.

103.      Upon information and belief, Defendant Navistar's agents provided Plaintiff with false information regarding the Trucks, including but not limited to the Trucks' performance capabilities, fuel economy, the effectiveness and durability of the Trucks' EGR system, the Trucks' overall fitness for use, the adequacy of its pre-launch testing, the ability to meet 2010 EPA emissions certification with a commercially viable vehicle that would work in the "real world," as well as representations revealed in discovery responses (the "Misrepresentations").

104.      Defendant Navistar's Misrepresentations included the following material representations to Plaintiff, upon which Plaintiff relied in connection with the purchase of the Trucks:

a.      The MaxxForce EGR system provides better "fluid economy" than other brands' selective
        catalytic reduction (SCR) system;

b.      The MaxxForce ProStars deliver the "lowest cost of ownership in the industry";

c.      The Trucks were free from defects and were suitable to perform the duties for which
        they were manufactured and sold;

d.      Defendants offer an expansive network of MaxxForce ProStar certified technicians on
        staff at all times;

e.      All authorized dealers in Defendants' network have MaxxForce ProStar certified
        technicians on staff at all times;

f.      Defendants' OnCommand service reduces downtime by communicating with the dealer's
        repair department and scheduling parts, technicians, and suggested all before the
        Trucks even arrive at the mechanic's shop;

g.      MaxxForce ProStars and MaxxForce engines are built for performance, reliability, and
        durability;

h.   MaxxForce ProStars and MaxxForce engines are built to maximize uptime, minimize downtime and be "always performing";

i.   MaxxForce ProStars and MaxxForce engines had gone through a rigorous and acceptable level of testing involving millions of miles of actual road testing and years of simulated testing to provide road ready Trucks from the day of purchase and Navistar had worked out/resolved all major issues during testing prior to launching the 2010 model;

j.   The MaxxForce engines were EPA 2010 certified;

k.   Th MaxxForce engines had met the .2 NOx emissions in a commercially viable truck and/or had no issues with meeting .2 NOx with a commercially viable vehicle that would operate in the "real world";

l.   The MaxxForce engines provided better fuel economy than its competitors;

m.   The design of the EGR System to meet the 2010 regulations was "mature," "proven," and not a "new technology.";

n.   The technology problems in the 2010 trucks were solved based upon changes to the technology and equipment in the Trucks purchased by Plaintiff thereafter; and

o.   The excessive and unusual downtime experienced by Plaintiff with the 2010 Year Model truck would be eliminated in the new Trucks bought by Plaintiff thereafter.

105.   Upon information and belief, Defendant Navistar knew that the Misrepresentations were false when they were made.

106.   Upon information and belief, the Misrepresentations were made by Defendant Navistar, to their dealer, Truck Center, with the intent that Truck Center would pass along the Misrepresentations to potential buyers, including the Plaintiff. These representations were also made directly by Navistar in advertising materials and public statements.

107.   Navistar did, in fact, make the Misrepresentations to Plaintiff regarding the Trucks.

108.   Upon information and belief, the Misrepresentations were also made by Defendant Navistar to their dealer, Truck Center, with the intent that Truck Center would pass along the Misrepresentations to truck owners, including Plaintiff, whose Trucks were being repaired and serviced by dealers like Truck Center. Both Navistar and Truck Center knew of the falsity of these Misrepresentations.

109.   Truck Center did, in fact, make the Misrepresentations to Plaintiff regarding the Trucks.

110.   If Plaintiff had known the true facts, Plaintiff would not have purchased any Trucks from Defendant Navistar, and would not have continued to permit Defendants to work on an attempt to repair the defective engines, all the while, keeping Plaintiff's Trucks out of service.

111.    At the time, Defendant Navistar made the above-described Misrepresentations, Defendant Navistar knew the Misrepresentations were false and/or made the Misrepresentations recklessly, as positive assertions, without knowledge of their truth.

112.    Defendant Navistar made the above-mentioned Misrepresentations with the intent that Plaintiff rely on the Misrepresentations in making the decision to purchase the Trucks, and thus, fraudulently induced Plaintiff to purchase said Trucks.

113.    Defendant Truck Center made the above-described Misrepresentations with the intent that the Plaintiff rely on Misrepresentations in making the decision to allow Truck Center to service and repair the Trucks.

114.    As a proximate result of Defendants' fraudulent Misrepresentations to Plaintiff, Plaintiff has suffered financial loss and other damages within the jurisdictional allowances of this Court, including, but not limited to:

   a.    Loss of profits;
   b.    Downtime expenses and losses;
   c.    Diminished resale value on the Trucks;
   d.    Out-of-pocket repair expenses;
   e.    Fuel expense incurred in excess of the represented amounts;
   f.    Towing expenses;
   g.    Lodging expenses;
   h.    Rental car expenses;
   i.    Unreimbursed driver downtime
   j.    Loss of revenue; and
   k.    Other economic, financial, consequential, incidental and exemplary damages allowed by law or equity.

## FRAUD BY NONDISCLOSURE

115.    In addition, or in the alternative, Plaintiff brings a cause of action for fraud by nondisclosure against Defendants, by and through their agents, servants and/or employees John Doe (1) and John Doe (2), for withholding material information, otherwise unavailable to Plaintiff, necessary to correct the false impression created by Defendants. Plaintiff incorporates all prior paragraphs regarding representations and fraud committed by Navistar as if fully set forth herein in this section.

116.    Upon information and belief, Plaintiff asserts that Defendants knew that the MaxxForce engine with the EGR cooling system ad inherent performance and reliability problems (the "Known Defects") at the time Plaintiff purchased the Trucks.

117.     Upon information and belief, Plaintiff asserts that Defendant Navistar knew as early as 2010 that the MaxxForce engine with the EGR cooling system would never meet the 2010 EPA .2g NOx emissions regulations, with the ability to operate in the real world.

118.     Upon information and belief, Plaintiff asserts that Defendant Navistar knew as early as 2008 that the MaxxForce engine with the EGR cooling system had severe technical problems that would lead to engine performance and quality issues, including heat, soot, and condensation issues. These issues and problems continued to exist throughout the testing and into the launch of the truck.

119.     Upon information and belief, Navistar knew its engine testing had been inadequate and truncated, late in starting, causing late design changes, immature designs, and increased warrant risk. Navistar failed to reveal these things while making representations that it had conducted millions of miles of real-world testing that had worked out all reliability, durability and quality issues with the engine and EGR system.

120.     Upon information and belief, Defendants knew that Plaintiff was ignorant of the Known Defects associated with the MaxxForce ProStars.

121.     Furthermore, Plaintiff did not have an equal opportunity to discover the Known Defects until after purchasing and operating the Trucks.

122.     Upon information and belief, Defendants deliberately withheld the information about the Known Defects associated with the MaxxForce ProStars when they had a duty to disclose the information to Plaintiff.

123.     By failing to disclose the Known Defects to Plaintiff, Defendant Navistar induced Plaintiff to purchase the Trucks.

124.      Plaintiff, relying on the Misrepresentations made by Defendants, purchased the Trucks.

125.     By failing to disclose the Known Defects to Plaintiff, Defendant Truck Center induced Plaintiff to continue servicing and repairing the Trucks.

126.     As a proximate result of Defendants' fraud by nondisclosure, Plaintiff has suffered financial loss and other damages within the jurisdictional allowances of this court, including, but not limited to:

a.     Loss of profits;

b.     Downtime expenses and losses;

c.     Diminished resale value on the Trucks;

d.     Out-of-pocket repair expenses;

e.     Fuel expenses incurred in excess of the represented amounts;

f.     Towing expenses;

g.      Lodging expenses;

h.     Rental car expenses, including fuel for same;

i.     Unreimbursed driver downtime;

j.     Loss of revenue; and

  k.  Other economic, financial, consequential, incidental and exemplary damages allowed by law or equity.

## NEGLIGENT MISREPRESENTATION/INTENTIONAL MISREPRESENTATION

  127. In addition, or in the alternative, Plaintiff brings a cause of action for negligent or intentional misrepresentation against Defendants, by and through their agents, servants and/or emplyees. With regard to negligent misrepresentation, Plaintiff would show that Defendants were acting in the course of transactions in which they had a pecuniary interest, Defendants supplied faulty information (the "Misrepresentations" as set forth fully in this Complaint) meant to guide others (specifically Plaintiff) in their business transaction, Defendants failed to exercise care in obtaining or communicating the information and Plaintiff justifiably relied upon the information. Plaintiffs incorporate all prior paragraphs regarding representations by Defendants as if fully set forth herein in this section.

  128. With regard to intentional misrepresentation, Plaintiff would show that Defendants made representations of existing or past facts (the "Misrepresentations as set forth fully herein), the representations were false when made, the representations were in regard to material facts, the false representations were made either knowingly or without belief in its truth or recklessly, Plaintiff reasonably relied on the misrepresented material facts and Plaintiff suffered damages as a result of the Misrepresentations. Plaintiffs incorporate all prior paragraphs regarding representations by Defendant as if fully set forth herein in this section.

  129. Upon information and belief, Plaintiff asserts that Defendant knew, or failed to exercise reasonable care in obtaining information, that the MaxxForce engine with the EGR cooling system had inherent performance and reliability problems (the "Known Defects") at the time Plaintiff purchased the Trucks. Upon information and belief, Plaintiff asserts that Defendant Navistar knew, or failed to exercise reasonable care in obtaining information, as early as 2010 that the MaxxForce engine with the EGR cooling system would never meet the 2010 EPA .2g NOx emissions regulations, with the ability to operate in the real world.

  130. Upon information and belief, Plaintiff asserts that Defendant Navistar knew, or failed to exercise reasonable care in obtaining information, as early as 2008 that the MaxxForce engine with the EGR cooling system had severe technical problems that would lead to engine performance and quality issues, including heat, soot, and condensation issues. These issues and problems continued to exist throughout the testing and into the launch of the truck.

  131. Upon information and belief, Navistar knew, or failed to exercise reasonable care in obtaining information; its engine testing had been inadequate and truncated, late in starting, causing late design changes, immature designs, and increased warrant risk. Navistar failed to reveal these things while making

representations that it had conducted millions of miles of real-world testing that had worked out all reliability, durability and quality issues with the engine and ERG system.

132.    Upon information and belief, Defendants knew that Plaintiff was ignorant of the Known Defects associated with the MaxxForce ProStars.

133.    Furthermore, Plaintiff did not have an equal opportunity to discover the Known Defects until after purchasing and operating the Trucks.

134.    By failing to disclose the Known Defects to Plaintiff, Defendant Navistar induced Plaintiff to purchase the Trucks. Plaintiff, relying on the Misrepresentations made by Defendants, purchased the Trucks. By perpetrating the Misrepresentations to Plaintiff, defendant Truck Center induced Plaintiff to continue servicing and repairing Trucks.

135.    As a proximate result of Defendants' negligent and intentional misrepresentations, Plaintiff has suffered financial loss and other damages within the jurisdictional allowances of this Court, including, but not limited to:

    a.    Loss of profits;

    b.    Downtime expenses and losses;

    c.    Diminished resale value on the Trucks

    d.    Out-of-pocket expenses;

    e.    Fuel expenses incurred in excess of the represented amounts;

    f.    Towing expenses;

    g.    Lodging expenses;

    h.    Rental car expenses, including fuel for same;

    i.    Unreimbursed driver downtime;

    j.    Loss of revenue; and

    k.    Other economic, financial, consequential, incidental and exemplary damages allowed by law or equity.

## IV.

## UNCONSCIONABILITY OF ALL WARRANTY DISCLAIMERS AND LIMITATIONS OF REMEDIES/DAMAGES

136.    Defendants' acts, by and through their agents, servants and/or employoees John Doe (1) and John Doe (2), have rendered all exclusive or limited express warranties inapplicable because they have failed their essential purpose in that no amount of repair has been able to remedy the defects in Plaintiff's Trucks.

137.      Due to the acts of Defendants as described herein, any and all attempts made by Defendants to limit damages through any disclaimer or limitation of damages/remedies provisions, are unconscionable. Based on the inequality of the bargain, and based on the knowledge of Navistar and information it withheld regarding the product sold to Plaintiff, Defendants' conduct shocks the judgment of a person with common sense. Further, the terms of the limitation of remedies/damages/warranties are inconspicuous and are so repressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other. Additionally, Defendants acted in an unfair and grossly unfair manner as described herein, by failing to act with good faith, as Defendants did not proceed with honesty, in fact, and the observance of reasonable commercial standards of fair dealing. This renders Defendants' attempted limitation of remedies and disclaimers void, due to the unconscionability of the provisions when coupled with the acts/knowledge of the Defendants.

138.      Plaintiff is entitled to recover all actual and economic damages, including all consequential and incidental damages listed herein from Defendants, because all exclusive or limited express warranties have failed in their essential purpose, and all attempted limitations of remedies/damage are unconscionable.

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against the Defendants and the Court award the following damages against Defendants:

    (i)      Actual damages;

    (ii)     Exemplary damages;

    (iii)    Loss of profits;

    (iv)    Downtime expenses and losses;

    (v)     Diminished resale value on the Trucks;

    (vi)    Out-of-pocket repair expenses;

    (vii)   Fuel expenses incurred in excess of the represented amounts;

    (ix)    Lodging expenses;

    (x)     Rental car expenses;

    (xi)    Unreimbursed driver downtime;

    (xii)   Loss of revenue;

    (xiii)  Towing expenses;

    (xiv)  Pre and post-judgement interest;

    (xv)   Costs of court;

(xvi)   Reasonable attorney's fees; and

(xvii) Such other and further relief which the Court deems just and proper.

Respectfully Submitted:

MINORA, MINORA, COLBASSANI,
KROWIAK, MATTIOLI & MUNLEY

AMIL M. MINORA, ESQUIRE
Attorney for Plaintiff
Attorney ID#22703

700 Vine Street
Scranton, PA 18510
(570) 961-1616

## VERIFICATION

I, _MICHAEL BIONDI_, hereby verify that I am the Plaintiff in the present action; that I have reviewed the facts set forth in the foregoing AMENDED COMPLAINT and they are true and correct to the best of my knowledge, information and belief.  I understand that false statements made herein are subject to the penalties of 18 PA C.S.A. Section 4904 relating to unsworn falsification to authorities.

MICHAEL BIONDI, owner of TEAM BIONDI, INC.