## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TEAM BIONDI, LLC,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:17-2294** |
| **v.** | : | **(JUDGE MANNION)** |
| **NAVISTAR, INC., PHILA. USED** | : | |
| **TRUCK CENTER, *et al.*,** | : | |
| **Defendants** | : | |

### MEMORANDUM

Before the court is defendant Navistar, Inc.'s motion for judgment on the pleadings with respect to the tort claims raised in the plaintiff's amended complaint, (Doc. 4), for failure to state a claim upon which relief may be granted and failure to plead fraud with particularity, pursuant Fed.R.Civ.P. 12(c), 12(b)(6), and 9(b). (Doc. 17). Navistar argues that plaintiff's tort claims, namely, fraud, fraud by nondisclosure, and negligent misrepresentation/intentional misrepresentation, are barred by Pennsylvania's gist of the action and economic-loss doctrines. Navistar also contends that plaintiff's fraud claims are not pleaded with the required particularity under Rule 9(b). For the reasons stated below, Navistar's motion will be **DENIED IN ITS ENTIRETY**.

## I.  **PROCEDURAL HISTORY**

Plaintiff Team Biondi, LLC originally filed its complaint on November 3, 2017, in the Court of Common Pleas of Lackawanna County against Defendants Navistar, Inc. and Philadelphia Used Truck Center.[1] Navistar removed the case to this federal court based on diversity of citizenship.

On January 8, 2018, plaintiff filed an amended complaint, (Doc. 4). Plaintiff raises the following claims: breach of express and implied warranty (Counts 1 & 2), breach of contract, (Count 3), as well as claims for fraud,

---

[1]Navistar notes that it is the only proper corporate defendant since "Philadelphia Used Truck Center" is not a separate Defendant from Navistar. It also indicates that Plaintiff is actually referring the International Used Truck Center in Philadelphia that is owned and operated by Navistar, and that it is not a separate legal entity. As such, the court directs the parties to confer as to the proper corporate defendant(s), and if they agree, to file a stipulation as to these defendant(s) within ten days of the date of this Memorandum. See Freedom Transp., Inc. v. Navistar Internatl. Corp., 2019 WL 4689604, *5 (D. Ks. Sept. 26, 2019) (explaining that Navistar International Corporation is the parent company of Defendant Navistar, Inc., a wholly-owned subsidiary that designs, manufactures, assembles, and distributes vehicles and related products, including [trucks].").

Additionally, as to the two John Doe defendants named in the amended complaint as "agents, servants and/or employees" of Navistar who allegedly "knowingly [made] false representations of material fact to plaintiff in connection with the purchase of the Trucks", plaintiff is put on notice that it must identify and effect service upon the two Doe defendants within 30 days if it wishes to proceed with its claims against them. If plaintiff fails to do so, the two Doe defendants will be subject to dismissal without prejudice pursuant to Rule 4(m) since it has been over 2½ years since the amended complaint was filed. See Alvarez v. Ebbert, 2019 WL 2762964, *10 (M.D. Pa. July 2, 2019).

fraud by nondisclosure, and negligent misrepresentation/intentional misrepresentation. (Counts 4, 5, & 6, respectively).

On January 26, 2018, Navistar filed its Answer to the amended complaint with affirmative defenses. (Doc. 5).

On February 13, 2018, pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, this matter was transferred under 28 U.S.C. §1407 to the Northern District of Illinois (the "MDL Court") along with many other actions involving common questions of fact. (Doc. 7). On August 10, 2020, the MDL Court issued a scheduling order setting Plaintiff's amended pleading deadline for September 10, 2020, and Defendants' amended pleading deadline for October 9, 2020. Upon the completion of the coordinated or consolidated pretrial proceedings, and pursuant to 28 U.S.C. §1407(a), on September 30, 2020, the United States Judicial Panel on Multidistrict Litigation remanded this case back to this court. (Doc. 8).

On November 4, 2020, Navistar filed its motion for judgment on the pleadings, (Doc. 17), and a brief in support, (Doc. 18). Navistar moves to dismiss all of plaintiff's tort-based causes of action pursuant to Federal Rules of Civil Procedure 12(c) and 12(b)(6) arguing that they fail to state a claim on which relief can be granted since they are barred by Pennsylvania's gist of

- 3 -

the action and economic loss doctrines. Navistar also seeks dismissal regarding plaintiff's fraud claims in the amended complaint arguing that they fail to satisfy Federal Rule of Civil Procedure Rule 9(b), which requires allegations of fraud to be pled with particularity.

On November 16, 2020, plaintiff filed its brief in opposition to Navistar's motion. (Doc. 19).

On November 30, 2020, Navistar filed its reply brief. (Doc. 24).

Thus, the matter is now ripe for decision.

## II.   **FACTUAL BACKGROUND**

Plaintiff is a logistics company and owner of a commercial trucking fleet engaged in the business of hauling commodities across 48 states. (Doc. 4, ¶8). Plaintiff alleges it purchased 13 used Navistar International brand Trucks with MaxxForce engines (the "Trucks") from the International Used Truck Center in Philadelphia. (Id. ¶¶ 9–11, 23). The Trucks were manufactured by Navistar and Navistar designed and manufactured the MaxxForce engine. The amended complaint alleges that during negotiations, Navistar and its agents and/or employees made a number of representations on which plaintiff relied in deciding to purchase the Trucks, including that the Trucks were "free from defects in design, material, and workmanship." (Id. ¶¶ 24,

- 4 -

30–52). Plaintiff alleges that the Trucks were defective or otherwise do not live up to its expectations. (Id. ¶¶ 24–29). In particular, plaintiff alleges that Navistar negligently and knowingly made false statements regrading the MaxxForce engine claiming that it met the EPA's 2010 .2q NOx mandated emission standard, and that the engines were EPA 2010 certified despite knowing that the representations were false.

Plaintiff claims it suffered various types of economic and financial losses as a result of the alleged defects with the Trucks which entitled it to damages. (Id., ¶ 77).

This court has subject matter jurisdiction over this case based on diversity of the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §1332. Venue is proper because a substantial part of the events giving rise to Plaintiff's claims occurred in this district. *See* 28 U.S.C. §1391(b)(2), §1404(a).


III.   **LEGAL STANDARD**

Navistar's motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(c). This Rule provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c).

"Pursuant to Rule 12(c), the movant for judgment on the pleadings must establish: (1) that no material issue of fact remains to be resolved; and (2) the entitlement to judgment as a matter of law." Joey's Place LLC v. City of Clifton, 2020 WL 7778066, *4 (D. N.J. Dec. 31, 2020) (citations omitted). "In resolving a motion made pursuant to Rule 12(c), the Court must view the facts in the pleadings and the inferences therefrom in the light most favorable to the non-movant." Id. Further, "a motion to dismiss for failure to state a claim under Rule 12(c) is identical to one filed under Rule 12(b)(6), except that Rule 12(c) allows for the motion to be filed after the filing of an answer, while Rule 12(b)(6) allows for the motion to be made in lieu of an answer." Id. (citations omitted).

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right

to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. <u>Id.</u> Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting <u>Twombly</u>, 550 U.S. 544 at 555).

Additionally, since plaintiff's claims "arise through state law and are presented to this Court under diversity jurisdiction [pursuant to 28 U.S.C. §1332], Pennsylvania state law determines the substantive law of action." <u>Metter v. Capella Univ., LLC</u>, 2021 WL 1610061, *3 (E.D. Pa. April 21, 2021) (citing <u>Erie R.R. Co. v. Tompkins,</u> 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); <u>Liggon-Redding v. Estate of Sugarman</u>, 659 F.3d 258, 262 (3d Cir. 2011) ("A federal court sitting in diversity must apply state substantive law.")).

## IV.   DISCUSSION

### A. GIST OF THE ACTION AND ECONOMIC LOSS DOCTRINES

Initially, Navistar raises the defense of Pennsylvania's gist of the action

and economic loss doctrines with respect to all of the fraud and

misrepresentations claims ("tort claims") asserted by the plaintiff.

As the court in Metter, 2021 WL 1610061, *4, recently explained:

> Under the gist of the action doctrine, "an alleged tort claim
> against a party to a contract ... is barred when the gist or
> gravamen of the cause of action stated in the complaint, although
> sounding in tort, is, in actuality, a claim against the party for
> breach of its contractual obligations." Earl, 990 F.3d at 314–15
> (quoting Dixon v. Nw. Mut., 146 A.3d 780, 788 (Pa. Super.
> 2016)). "The critical determinative factor in determining whether
> the claim is truly one in tort, or for breach of contract" is "the
> nature of the duty alleged to have been breached." Bruno v. Erie
> Insurance Co., 630 Pa. 79, 111–12 (2014). If the "duty breached
> is one created by the terms of the contract, then the claim is to
> be viewed as one for breach of contract." Id. at 112. If, however,
> the duty is one "imposed by the law of torts, and, hence, exists
> regardless of the contract, then it must be regarded as a tort." Id.

"Similarly, the economic loss doctrine prohibits (1) common law claims

(2) that assert economic losses (3) arising solely from contractual duties:

> Specifically, if the duty arises under a contract between the
> parties, a tort action will not lie from a breach of that duty.
> However, if the duty arises independently of any contractual
> duties between the parties, then a breach of that duty may
> support a tort action."

Id. (quoting Dittman v. UPMC, 649 Pa. 496, 525 (2018). "The doctrine does

not apply, however, 'when a statute provides a private cause of action for

- 8 -

economic losses,' ...." *Id.* (citing <u>Earl</u>, 990 F.3d at 313-14).[2]

Further, based on the Third Circuit's recent decision in Earl, 990 F.3d at 315-16, "where a plaintiff's tort claim 'is not primarily premised upon the terms of the contract ... but on the marketing and representations that induced her to enter into the contract in the first instance,' the claim is 'collateral' to any contractual duties." *Id.*

Navistar argues that plaintiff's tort claims fail to state a cognizable claim since "under the gist-of-the-action doctrine, the true gist or gravamen of the Tort Claims sound squarely in contract, not tort", and, since "under the economic loss doctrine, the Tort Claims fail because the allegedly defective

---

[2]Navistar relies, in part, on <u>Werwinski v. Ford Motor Co</u>., 286 F.3d 661 (3d Cir. 2002), a Third Circuit opinion that interpreted Pennsylvania's economic loss doctrine. In <u>Werwinski</u>, "the plaintiffs alleged that Ford concealed material information from consumers while marketing vehicles with defective transmissions", and "[t]he Third Circuit held that the economic loss doctrine barred the plaintiffs' fraudulent concealment claims, finding that the plaintiffs were 'unable to explain why contract remedies are inadequate to provide redress when the alleged misrepresentation relates to the quality or characteristics of the goods sold.'" <u>Freedom Transp., Inc. v. Navistar Internatl. Corp</u>., 2019 WL 4689604, *24 (D. Ks. Sept. 26, 2019) (citation omitted). However, after the parties filed their briefs in this case, the Third Circuit decided <u>Earl v. NVR, Inc.</u>, 990 F.3d 310 (3d Cir. 2021), in which the Court abrogated <u>Werwinski</u>. *See* <u>Metter</u>, 2021 WL 1610061, *2.

After discovery is completed, if appropriate, Navistar can re-assert its contentions that plaintiff's tort claims are barred by Pennsylvania's economic loss and gist of the action doctrines in a summary judgment motion addressing the impact of the recent Third Circuit decision in <u>Earl v. NVR, Inc.</u>, 990 F.3d 310 (3d Cir. 2021), on plaintiff's claims.

product caused damages only to itself or consequential damages resulting from the loss of the use of the product." (Doc. 18 at 9-10). Navistar also states that "[a]ny duty owed to Plaintiff regarding the Trucks' performance arose solely from the parties' agreements, not from a general tort duty." As such, Navistar contends that "Plaintiff brings its Tort Claims to seek recovery of purely economic losses based on the quality of bargained-for goods and disappointed expectations with the Trucks", and that "Pennsylvania's economic-loss and gist-of-the-action doctrines bar these claims."

Thus, Navistar, (Id. at 13-14), contends that:

the gist-of-the-action doctrine bars Plaintiff's Tort Claims because the duties alleged to have been breached arise from the parties' contracts and warranties, not broad societal duties owed independently of the parties' contractual relationship. *See* Bruno, 106 A.3d at 68–69. The "gist" of the Complaint is that Defendant sold Plaintiff goods that were not of the quality warranted or expected. *See* Am. Compl. ¶¶24 – 29. Thus, the Tort Claims arise solely from, are created and grounded in, and stem from the contracts for sale and related warranties for the subject Trucks.

The Tort Claims also duplicate the breach of contract and breach of warranty claims. Plaintiff's breach of warranty and breach of contract claims, allege in pertinent part that the Trucks were not of the particular quality they were warranted and represented to be, the Trucks were defective, and Defendant failed or refused to repair the Trucks to correct the alleged defects. Am. Compl. ¶¶79–85, 87–94, 96–100. Plaintiff's Tort Claims complain of the same things. *See, e.g.*, Id. ¶¶103, 110, 116, 130. Plaintiff's Tort Claims, moreover, identify the same damages: various economic and financial losses such as lost profits and downtime expenses. *See, e.g.*, Id. ¶¶ 114, 126, 135. As Plaintiff's Tort Claims are

inextricably intertwined with its breach of warranty and breach of contract claims, its Tort Claims are barred under the gist-of-the-action doctrine and should be dismissed.

Navistar also contends that "the only damages Plaintiff identifies are purely economic losses tied squarely to the Trucks' alleged performance and reliability issues and consequential damages resulting from the loss of their use." (citing Doc. 4 at ¶¶114, 126, 135). It states that "there is simply no plausible causal nexus between [its] 'broad social duty' to help provide clean air and the commercial losses allegedly suffered by [plaintiff]."

Plaintiff argues that that neither the gist of the action doctrine nor the economic loss doctrine bars its tort claims. It states that its claims sound in both contract and tort. Plaintiff states that "Navistar had a duty independent of the sales contract with [it] not to violate the EPA 2010 emission standard of .2q NOx", and that "Navistar used emission credits 'banked' with the EPA which allowed [it] to continue to sell MaxxForce vehicles until [its] emission credits ran out in February 2012." Plaintiff further states that since "the EPA emission standards are promulgated to help provide cleaner air for Americans to breathe", [Navistar] violating [the] standards violates a broad social duty [it] owed to all individuals."

As a backdrop to plaintiff's allegations, in a similar case against Navistar, the court in  Freedom Transp., Inc. v. Navistar Internat'l. Corp.,

2019 WL 4689604, *3, explained:

> [International] trucks were manufactured by Navistar, Inc. in 2010 and 2011 and featured the MaxxForce engine, which Navistar, Inc. designed and manufactured. The MaxxForce engine has an exhaust-gas-recirculation-only ("EGR-only") emission system, which recirculates engine exhaust gas back into the engine to be re-combusted.
>
> In public statements, press releases and advertising, the Navistar Defendants touted the MaxxForce engine's unique EGR-only technology as providing superior fluid economy and represented that the engines would be certified under the EPA's 2010 emission standards. But the engines never reached the EPA's 2010 emission standards threshold necessary for certification. Based on the data results of extensive pre-market testing that is standard in the industry, Navistar knew that the engines were never going to meet the EPA's standards using EGR-only technology. Navistar's EGR-only emission system causes widespread engine damage, repeated engine failures, and decreased fuel efficiency. One of the most significant problems with the EGR-only emission system is that the continuous recirculation of exhaust gas back into the engine reduces the engine's efficiency, causing it to overheat and producing excessive soot inside the engine. The Navistar Defendants knew about these problems and concealed this information from the public and from Plaintiff. By mid-2011, warranty claims for the engines were significantly increased, which the Navistar Defendants also concealed. The Navistar Defendants also failed to properly repair the EGR-only systems during and/or outside the warranty period.
>
> By February 2012, the Navistar Defendants ran out of "banked" EPA emissions credits, which they had been using to continue to sell the MaxxForce engines. The Navistar Defendants continued to manufacture and distribute the MaxxForce-powered International [] trucks while making false representations to the public and to Plaintiff regarding their performance capabilities, reliability, EPA certification, and Navistar's commitment to the

MaxxForce engine that Navistar knew to be false. In July 2012, the Navistar Defendants announced that they were abandoning the EGR-only system; and beginning in March 2013, they began retiring the MaxxForce engine. By 2015, the MaxxForce was no longer used in International [] trucks.

In Bruno v. Erie Ins. Co., 630 Pa. 79, 106 A.3d 48, 71 (2014), the

Pennsylvania Supreme Court found that the plaintiffs'' negligence claim was

not barred by the gist of the action doctrine, and held:

> Accordingly, while Erie had contractual obligations under its policy to investigate whether mold was present, and also to pay for all property damage caused by mold, the substance of the Brunos' allegations is not that it failed to meet these obligations; rather, it is that Erie, during the course of fulfilling these obligations through the actions of its agents, acted in a negligent manner by making false assurances regarding the toxicity of the mold and affirmatively recommending to the Brunos that they continue their renovation efforts, which caused them to suffer physical harm because of their reasonable reliance on those assurances. Consequently, these allegations of negligence facially concern Erie's alleged breach of a general social duty, not a breach of any duty created by the insurance policy itself. The policy in this instance merely served as the vehicle which established the relationship between the Brunos and Erie, during the existence of which Erie allegedly committed a tort.

In Odgers v. Progressive N. Ins. Co., 112 F. Supp. 3d 286, 292 (M.D.

Pa. 2015), the court stated:

> A certain tension exists, at the motion to dismiss stage, between Pennsylvania's "gist of the action" doctrine and Rules 8(d)(2) and (3) of the Federal Rules of Civil Procedure, which expressly condone pleading in the alternative. District courts in Pennsylvania have noted that caution should be exercised in determining the "gist of an action" at the motion to dismiss stage.

In <u>Freedom Transportation</u>, 2019 WL 4689604 at *23-24, the court denied defendants' motion to dismiss for failure to state a claim based on Kansas' economic loss doctrine, which similar to Pennsylvania's doctrine, is "a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses."

In light of the <u>Earl</u> decision, the court finds that plaintiff has sufficiently alleged, at this stage of the case, that its tort claims for fraud and misrepresentations are based on duties Navistar owed to it that were independent from the contracts to purchase the 13 Trucks and that it has an independent right to recovery regarding Navistar that is not based upon the contracts, and thus, the gist of the action doctrine and economic loss doctrine do not bar its tort claims. *See* <u>Okulski v. Carvana, LLC</u>, 2021 WL 2223834, *4 (E.D. Pa. June 2, 2021) (holding that "[plaintiff's] fraud claim, like the *Earl* plaintiff's UTPCPL claim, rests on allegations that Defendants engaged in false marketing and made false representations to induce Okulski to purchase the Vehicle. In light of *Earl*, this fraud claim is not clearly precluded by the economic loss rule.") (citing <u>Metter v. Capella Univ., LLC</u>, 2021 WL 1610061, at *4 (E.D. Pa. Apr. 21, 2021) ("applying *Earl* and finding a fraudulent misrepresentation claim not barred by the economic loss and gist

of the action doctrines, where defendant university allegedly made material, pre-contractual misrepresentations to induce plaintiff's enrollment")).

In <u>Okulski</u>, *id*. at \*3, the court reinstated its plaintiff's dismissed UTPCPL and fraud claims, based on <u>Earl</u>, and explained:

> Like Earl, Okulski alleges that he was induced to purchase the Vehicle by Defendants' marketing and pre-transaction representations—such as the company's advertisement of the Vehicle as "CARVANA CERTIFIED" and subject to a "careful 150-point inspection," and its representation that the Vehicle had never been damaged or in an accident—and that the Vehicle failed to live up to these representations. The *Earl* decision thus suggests that this Court interpreted the gist of the action doctrine too expansively when disposing of Okulski's common law fraud claim and, further, that Okulski's UTPCPL claim (which, like the fraud claim, is premised on Defendants' allegedly false representations concerning the Vehicle's "history, condition and quality") is not barred by the doctrine.

The court in <u>Okulski</u>, *id*. at \*4, further explained:

> [T]o the extent Okulski's common law fraud claim is premised on Defendants' "marketing and representations that induced [Okulski] to enter into the contract in the first instance," *see Earl*, 990 F.3d at 315, it too must [be reinstated]. Because the gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract and tort claims," *Okulski*, 2020 WL 4934345, at \*4 (quoting *eToll*, 811 A.2d at 14), the doctrine comes into play only where the defendant's alleged misrepresentations are intertwined with the terms of the parties' contract, that is, where the plaintiff's tort claim "is, in actuality, a claim against the party for breach of its contractual obligations," *see Bruno*, 106 A.3d at 53. The *Earl* court found that where, as here, a defendant is alleged to have made false promises to induce the plaintiff to enter an agreement, the subjects of which are not express terms of the parties' contract, this conduct is

collateral to the defendant's contractual obligations. *See Earl*, 990 F.3d at 315-16. This determination governs here.

Finally, the court in <u>Okulski</u>, *id*., found that plaintiff's fraud claim was not barred by the economic loss doctrine and would be reinstated, holding that:

> This argument, too, is ruled out by *Earl*. Like the gist of the action doctrine, the economic loss rule is intended to prevent plaintiffs from recovering in tort for a breach of contractual obligations. *See* <u>Dittman v. UPMC</u>, 196 A.3d 1036, 1052 (Pa. 2018). Thus, application of either doctrine rests on a predicate finding that the duty allegedly breached by the defendant arises under a contract between the parties. *See id.* at 1054. If, however, "the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action." *Id.* In *Earl*, the Third Circuit held that the false marketing and pre-sale misrepresentations alleged by the plaintiff violated a "broader social duty owed to all individuals," rather than any specific term of the parties' contract. *See* <u>Earl</u>, 990 F.3d at 315 (quoting <u>Bruno</u>, 106 A.3d at 68). Okulski's fraud claim, like the *Earl* plaintiff's UTPCPL claim, rests on allegations that Defendants engaged in false marketing and made false representations to induce Okulski to purchase the Vehicle. In light of *Earl*, this fraud claim is not clearly precluded by the economic loss rule.

Therefore, based on the above discussion, Navistar's motion for judgment on the pleadings for failure to state claims based on the gist of the action and the economic loss doctrines with respect to plaintiff's tort claims raised in its amended complaint will be denied.

## B. RULE 9(B) PARTICULARITY REQUIREMENT

Navistar also argues that "[a]ll of Plaintiff's Tort Claims except negligent misrepresentation are fraud based, and Plaintiff failed to meet the heightened particularity requirement under Rule 9(b)."

"The elements of fraud [under Pennsylvania law] are: (1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Bessemer Sys. Fed. Credit Union v. Fiserv Solutions, LLC, 472 F.Supp.3d 142, 165 (W.D. Pa. 2020) (quoting Joyce v. Erie Ins. Exch., 74 A.3d 157, 166–67 (Pa. Super. 2013)). "A fraudulent inducement claim requires that the misrepresentation was made with the specific intent to induce another to enter into a contract when the person had no duty to enter into the contract." Id. (internal quotations and citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Under Fed.R.Civ.P. 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Specifically, under Rule 9(b), "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (citation omitted). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id.

The court finds that plaintiff's amended complaint adequately satisfies the heightened pleading requirements of Rule 9(b) when alleging the tort claims. (See Doc. 4, ¶¶102-135).

Thus, Navistar's motion to dismiss plaintiff's tort claims for failure to comply with Rule 9(b) will be **DENIED**.


V. **CONCLUSION**

For the reasons stated above, Navistar's motion for judgment on the pleadings, **(Doc. 17)**, seeking to dismiss all of the plaintiff's tort claims pursuant to Federal Rules of Civil Procedure 12(c), 12(b)(6), and 9(b), will

be **DENIED IN ITS ENTIRETY**. The plaintiff's tort claims asserted in its

amended complaint, (Doc. 4), will **PROCEED**.

An appropriate order shall follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: September 28, 2021**
17-2294-01