**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TEAM BIONDI, LLC,** | : | **CIVIL ACTION NO. 3:17-2294** |
| **Plaintiff** | : | |
| | | **(JUDGE MANNION)** |
| **v.** | : | |
| **NAVISTAR, INC., PHILA. USED** | : | |
| **TRUCK CENTER,** *et al.*, | | |
| | : | |
| **Defendants** | | |

**MEMORANDUM**

Presently before the court is Defendant Navistar, Inc.'s motion for summary judgment. (Docs. 51, 55). Plaintiff Team Biondi, LLC, filed a brief in opposition, (Doc. 57), to which Navistar replied, (Doc. 59). This case arises out of a dispute between Team Biondi, a Pennsylvania trucking company, and Navistar, a commercial equipment and vehicle manufacture headquartered in Illinois, regarding Team Biondi's purchase of twelve allegedly defective used trucks from Navistar around 2015. Navistar's motion raises questions pertaining to "as is" clauses and disclaimers of warranty in contracts between two sophisticated parties for the sale of goods, as well as providing a cautionary tale for those seeking to rely on extracontractual representations that are explicitly contradicted by conspicuous language in an executed agreement. Since Navistar has met

its burden as the moving party to show there is no genuine dispute as to any material fact for Team Biondi's contract and tort claims, and Team Biondi has not proffered sufficient evidence to raise a genuine dispute, the court will **GRANT** Navistar's motion for summary judgment.[1]

I.   **FACTUAL BACKGROUND**[2]

With respect to Navistar's motion for summary judgment, the essential, undisputed facts are as follows.[3]

---

[1] Also before the court is Navistar's motion to exclude testimony of Team Biondi's expert, (Doc. 48), which the court will **DISMISS as moot** since it will grant summary judgment for Navistar.

[2] The factual background is taken from the parties' submissions to the extent they are consistent with the evidence in the record. (Docs. 51, 52, 54, 55, 57, 59).

[3] Team Biondi is noncompliant with Local Rule 56.1 because it failed to file a response to Navistar's statement of material facts. *See* M.D. Pa. Local R. 56.1 ("The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the" moving party's Rule 56.1 statement.). While Team Biondi's brief in opposition contains some facts of which it attempts to raise a genuine dispute, "[Rule 56.1] clearly mandates an answer to the moving party's statement of facts separate from the opposition brief." *Conn v. Bull*, 307 F. App'x 631, 633 (3d Cir. 2009). Rule 56.1 also provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." That said, the proper sanction for violating Rule 56.1 is within the district court's discretion. *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613–14 (3d Cir. 2018). In accordance with the plain language of Rule 56.1, the court will deem the facts in Navistar's Rule 56.1

*(footnote continued on next page)*

Plaintiff Team Biondi, LLC, is a trucking company headquartered in Lake Ariel, Pennsylvania, that hauls refrigerated food products to distribution centers across the 48 contiguous states. Defendant Navistar, Inc., is a commercial equipment and vehicle manufacturer headquartered in Lisle, Illinois. Among Navistar's products are class 8 commercial trucks; Navistar has designed and manufactured the engines that power those trucks, including the MaxxForce 13-litre engine.

More stringent emission regulations for commercial motor vehicles, promulgated by the Environmental Protection Agency, became effective beginning with model year 2010 vehicles. Leading up to this regulatory change, all American commercial diesel engine manufacturers were forced to engineer a means of reducing nitrous oxide (NOx) emissions to a lower level than ever previously attempted. Starting in 2010, the EPA standards required, among other things, qualified "families" of engines to output no more than "0.5 grams per brake horsepower-hour." *See* 40 C.F.R. §86.001-11. To assist in meeting the 2010 standards, a manufacturer could utilize "credits" earned from other qualifying engines that were certified at lower emission outputs than the standards required. *See* 40 C.F.R. §86.001-15.

---

statement admitted to the extent they are not clearly disputed by the record citations in Team Biondi's opposition brief.

For model years 2010 through 2013, Navistar manufactured the MaxxForce 13-litre heavy duty engine. The MaxxForce engine was certified compliant by the EPA at the 0.5-gram NOx level with the utilization of credits. The engines differed from Navistar's competitors in that they reduced emission output solely through an exhaust gas recirculation (EGR) system as compared to a selective catalytic reduction (SCR) system that requires additive chemicals. The MaxxForce 13-litre was used in Navistar's heavy-duty vehicles, including its "International" branded Prostars and Lonestars. In 2014, Navistar ceased using the MaxxForce engines in its heavy-duty vehicles, switching to SCR engines. The ultimate failure of the EGR system in the MaxxForce engine has been documented in numerous federal and state lawsuits across the country. The engines suffered from soot and heat issues, among other things. Team Biondi cites trial testimony from three upper-level management personnel at Navistar from a Tennessee state trial in Madison County, Tennessee, that suggests at least some of Navistar's management knew and did not disclose the apparent unreliability of the EGR engines.

Approximately two years after Navistar ended production of the heavy-duty MaxxForce engines, Team Biondi sought to expand its fleet. In three separate transactions in 2015, Team Biondi purchased twelve used

International Prostars and Lonestars (the "Trucks") from Navistar's Used Truck Center in Philadelphia, Pennsylvania. The Trucks had already accumulated significant mileage prior to Team Biondi's purchase; the mileage at purchase ranged from 142,390 to 284,152 miles.

Team Biondi's owner and president, Michael Biondi, was the sole decision maker regarding the purchase of the Trucks, and no one else from Team Biondi was present during negotiations. He negotiated solely with Steve Gunnarson, a Navistar employee and salesperson at the Used Truck Center. Prior to Team Biondi's purchase, the Trucks underwent Navistar's "Diamond Renewed" certification program. The Diamond Renewed program was created by Navistar and consisted of a 180-point pre-sale inspection, parts refurbishments and replacements, and on-board computer software upgrades.

Mr. Biondi testified that he purchased the Trucks based on representations from Navistar that the Trucks had increased uptime, complied with EPA NOx requirements, promised cost savings for purchase and operation, and had undergone extensive testing through the Diamond Renewed program. Michael Biondi also testified that ads for the Diamond Renewed vehicles were in various trade papers and represented that

"reliability was up" and "computer parameters were improved." (*See* Doc. 57 at 10).

Navistar sold the Trucks to Team Biondi "as is," and for each Truck, Mr. Biondi executed a "Warranty Acceptance/Denial" form acknowledging the "as is" sale. Team Biondi also purchased from Navistar an Optional Service Contract. Under the Service Contract, Navistar agreed to "repair or replace" certain covered vehicle components for two years or 200,000 miles, whichever came first. The Service Contract contains a disclaimer of all implied and expressed warranties, consequential damages, and parol representations. Mr. Biondi executed a Service Contract for each Truck. Team Biondi used the Trucks to haul refrigerated goods across the country.

During the approximately two years in which it owned the Trucks, Team Biondi accumulated on average 237,576 miles per Truck, thereby exceeding the Service Contract's length of coverage for most of the Trucks. Even so, Team Biondi had numerous issues with the Trucks, which needed ongoing engine repairs. Mr. Gunnarson, the Navistar salesman whom Mr. Biondi dealt with, testified that the Trucks Mr. Biondi purchased had to be fixed approximately six times in the short period Mr. Biondi owned them, and there came a point where Mr. Gunnarson believed the Trucks simply could not be fixed. Mr. Gunnarson also testified that while, in his view, the

- 6 -

trucks with the EGR system were less expensive than other trucks due to the market's perception of the truck's engine issue, he was never specifically informed by Navistar of any unresolved defects in the EGR system.

At some point leading up to July 2017, Team Biondi stopped paying its financing notes for the Trucks. In July 2017, all twelve Trucks were repossessed by Team Biondi's lenders for non-payment. After the trucks were repossessed and without providing any pre-suit notice to Navistar, Team Biondi filed suit against Navistar alleging that the Trucks' engines were defective and that the Trucks did not meet Team Biondi's expectations based on Navistar's alleged representations.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a

reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F.Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). The court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325.

If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-moving party must direct the court's attention to specific, triable facts by "*citing particular parts* of materials in the record." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added); *see United States v. Starnes*, 583 F.3d 196, 216 (3d Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)); *see also DeShields v. Int'l Resort Properties Ltd.*, 463 F. App'x 117, 120 (3d Cir. 2012) ("If factual support for [a plaintiff's] claim exist[s] in the record, it [i]s incumbent upon her to direct the District Court's attention to those facts."). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23; *Jakimas v. Hoffman–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

Finally, the court is sitting in diversity resolving a matter of state law in this case; thus, "[i]nasmuch as Pennsylvania law governs this action[,] we treat Pennsylvania Supreme Court opinions as binding precedent and Pennsylvania Superior Court opinions as persuasive precedent." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 107 n.2 (3d Cir. 2009).[4]

---

[4] This court has subject matter jurisdiction based on diversity because this case is between citizens of different states and the amount in controversy exceeds $75,000. Team Biondi also names the Used Truck Center in Philadelphia, Pennsylvania, as a defendant, which would seem to destroy diversity since Mr. Biondi is a Pennsylvania resident. However, the court finds the Used Truck Center is not a proper defendant in this case and is therefore dismissed. In its Memorandum on Navistar's motion for judgment on the pleadings, the court "direct[ed] the parties to confer as to the proper corporate defendant(s), and if they agree, to file a stipulation as to these defendant(s) within ten days[.]" (Doc. 43 at 2 n.1). The parties did not file a stipulation. Navistar noted in its motion for judgment on the pleadings that "Philadelphia Used Truck Center" is not a separate legal entity from Navistar but is simply one of Navistar's places of business. This explanation has not been contradicted by Plaintiff in the more than two years since it was made. (*See* Doc. 18 at 6 n.1). Accordingly, the court will dismiss "Philadelphia Used Truck Center" with prejudice as an improper defendant. In the same Memorandum, (Doc. 43), the court put Team Biondi "on notice that it must identify and effect service upon the two Doe defendants within 30 days . . . [or they] will be subject to dismissal without prejudice pursuant to Rule 4(m)." Team Biondi did not effect service upon the two Doe defendants, and thus they will be dismissed with prejudice.

## III.   DISCUSSION

Team Biondi brings four contract claims—breach of express warranty, breach of implied warranty, breach of contract, and "unconscionability of all warranty disclaimers and limitations of remedies/damages"—and three tort claims—fraud, "fraud by nondisclosure," and "negligent or intentional misrepresentation"—against Navistar for its alleged commercial malfeasance. The court finds summary judgment is appropriate on Team Biondi's contract and tort claims for the reasons that follow.

### A. Contract Claims

Navistar moves for summary judgment on Team Biondi's contract claims; however, a close read of Team Biondi's opposition brief does not reveal any responsive argument opposing summary judgment of these claims—its brief instead focuses on its tort claims sounding in fraud.[5] This,

---

[5] Navistar clearly moves for summary judgment on all of Team Biondi's contract and tort claims, (*see* Doc. 55, Brief in Support of Summary Judgment); but Team Biondi's opposition brief frames the "statement of questions involved" to only include two issues, both relating only to its fraud/misrepresentation tort claims, (*see, e.g.,* Doc. 57 at 4) (stating question one of the questions involved as "[w]hether Defendants' 'as is' reliance absolves Defendants of responsibility for *fraud/material misrepresentations*," when Navistar's question one of the questions involved was "[w]hether the sales contracts 'as is' acknowledgements and disclaimers of parol representations and warranties defeat Plaintiff's *causes*

*(footnote continued on next page)*

however, does not relieve Navistar of its initial burden as the moving party. *See* Fed. R. Civ. P. 56. In reviewing the record before it, the court finds Navistar has met its burden to show there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law on these claims.

### 1. Implied warranty

Both the implied warranty of merchantability and the warranty of fitness for a particular purpose arise by operation of law and serve to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose. *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992) (citing *Vlases v. Montgomery Ward & Co.*, 377 F.2d 846, 849 (3d Cir. 1967)). In order to be merchantable, goods must be "fit for the ordinary purposes for which such goods are used." 13 Pa.C.S.A. §2314(b)(3). The warranty of fitness for a particular purpose requires that the seller had reason to know of the buyer's particular purpose at the time of contracting and that the buyer was relying on the seller's expertise; in that case, the goods are implicitly warranted to be fit for that particular purpose. 13 Pa.C.S.A. §2315. To

---

*of action* as a matter of law.") (emphasis added). Team Biondi had an opportunity to oppose summary judgment of its contract claims but chose not to.

establish a breach of either warranty, plaintiffs must show, among other things, that the equipment they purchased from defendant was defective. *Altronics*, 957 F.2d at 1105.

That said, under Pennsylvania law, the seller may exclude implied warranties with clear, conspicuous contractual language to that effect. *See* 13 Pa.C.S.A. §2316(b). And "[u]nless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the attention of the buyer to the exclusion of warranties and makes plain that there is no implied warranty." 13 Pa.C.S.A. §2316(c)(1).

Here, Navistar argues Team Biondi's breach of implied warranty claim fails because the trucks in this case were sold "as is," and the Service Contracts contained a conspicuous disclaimer of all implied warranties. The court agrees. It is undisputed that Team Biondi's president and owner, Michael Biondi, signed a "Warranty Acceptance/Denial" form acknowledging and accepting the Trucks "as is." (*See* Doc. 54-9). The relevant language directly above the signature line provided: "As the vehicle(s) purchased are sold 'as is' and with no warranty of any kind, I have been offered the opportunity to purchase a warranty on the qualifying vehicles I have purchased." Under Pennsylvania law, this "as is" expression

is sufficient to exclude implied warranties for the sale of the Trucks.[6] *See* 13 Pa.C.S.A. §2316(c)(1). Moreover, it is also undisputed that the Service Contract similarly contained clear language in all capital letters under the bolded heading, "DISCLAIMER," which disclaimed "all other warranties, express or implied," besides the express warranty to "repair or replace" the parts covered under the Service Contract. (Doc. 54-5). Accordingly, given the "as is" expression and clear exclusion of warranties in the controlling documents for the sales of the Trucks, Team Biondi cannot make out a breach of implied warranty claim under Pennsylvania law; summary judgment for Navistar on this claim is appropriate.

## 2. *Express warranty and breach of contract*

An express warranty, "as distinguished from an implied warranty, does not independently arise by operation of state law," but rather is "part of a contract between the parties." *Silver v. Medtronic, Inc.*, 236 F.Supp.3d 889, 901 (M.D. Pa. 2017) (citations omitted); *see also* 13 Pa.C.S.A. §2313 (creation of express warranties). "Given that express warranties are specifically negotiated (rather than automatically implied by law), it follows

---

[6] The testimonial evidence also demonstrates Mr. Biondi understood what "as is" means: "Q. What is your understanding of what it means to purchase a truck as is? A. I think that once you leave with the vehicle, whatever you got you got." (Doc. 54-11 at 27–28).

that to create an express warranty, the seller must expressly communicate the terms of the warranty to the buyer in such a manner that the buyer understands those terms and accepts them." *Goodman v. PPG Indus., Inc.*, 849 A.2d 1239, 1243 (Pa. Super. Ct. 2004), *aff'd*, 885 A.2d 982 (Pa. 2005).

To prove a claim for breach of contract, a plaintiff must show that (1) a contract existed between the parties, (2) the defendant breached a duty imposed by that contract, and (3) the plaintiff suffered damages as a result. *McShea v. City of Phila.*, 995 A.2d 334, 340 (Pa. 2010).

Team Biondi's complaint alleges Navistar expressly warranted "the trucks were free from defects and were suitable to perform the duties for which they were manufactured and sold." (Doc. 4 at 10). The complaint also alleges the parties entered into a contract which obligated Navistar "to provide the Trucks free from defects." (Doc. 4 at 12). Navistar argues Team Biondi's breach of express warranty and breach of contract claims fail because Navistar did not warrant that the trucks were free from defects, only that it would repair or replace parts on an as-needed basis based on the Service Contract—an obligation Navistar contends it fulfilled. As Navistar points out, the only agreement governing the Trucks' condition is the Service Contract. That contract does not contain representations regarding the Trucks' quality or durability; the operative language only

obligates Navistar to "repair or replace" certain components as needed. (*See* Doc. 54-5, Service Contract).[7] Team Biondi does not allege, nor present evidence to demonstrate, that Navistar did not repair or replace certain component parts of the Trucks as it was obligated to under the Serve Contract. In response to discovery requests from Navistar, Team Biondi produced several banker boxes of original invoices and lists of repairs that it kept on file for each Truck. None of the invoices are for repairs covered by the Service Contract, nor do they identify a wrongfully rejected repair that was covered by the Service Contract. (*See* Doc. 54-7 at 3–4).

Moreover, Navistar's purported representations regarding the quality of the Trucks—*e.g.*, that the Trucks had increased uptime, were

---

[7] As Navistar indicates, courts across the country have affirmed the limited scope of the Navistar Service Contract. For example, the Tennessee Supreme Court found:

> [T]he [Service Contract] Warranties required Navistar to make repairs as needed but did not impose on Navistar an obligation to ensure that the trucks would never again need repairs. Nor did the Warranties obligate Navistar to provide trucks free from defects. To the contrary, the premise of a repair and replace warranty is that repairs may well be needed.

*Milan Supply Chain Solutions, Inc. v. Navistar, Inc.*, 627 S.W.3d 125, 157 (Tenn. 2021). Having reviewed the Service Contract, this court finds the Tennessee Court's description apt.

inexpensive to operate, and had undergone extensive testing, (Doc. 57 at 10)—are barred by the parol evidence rule since they explicitly contradict the Warranty Acceptance/Denial's acknowledgement that the Trucks were sold "as is" and the Service Contract's disclaimer of "all other representations to the user/purchaser." 13 Pa.C.S.A. §2202 (written terms of agreement cannot be contradicted by a prior agreement or contemporaneous oral agreement). The Service Contract's disclaimer of all other representations and warranties also shows the contract was "intended by the parties as a final expression of their agreement" as required for application of the parol evidence rule. 13 Pa.C.S.A. §2202.

Accordingly, Team Biondi cannot show Navistar breached the purported express warranty or the Service Contract. Summary judgment is thus appropriate for these two claims as well.

### 3. Unconscionability

The court also finds summary judgment is appropriate on Team Biondi's unconscionability claim. That claim alleges the Service Contract's disclaimers and limitation of remedies are unconscionable and failed their essential purpose. Team Biondi did not respond to Navistar's motion for summary judgment of this claim, and the court finds the claim to be meritless on this record. The essential bargain of the Service Contract was

for Navistar to pay repair costs for the Trucks for a period of time. The record indicates Navistar held up its end of the bargain, the Trucks having run an average of 235,000 miles each for Team Biondi over the term of the Service Contract. (*See* Doc. 54-7). Thus, there was no failure of essential purpose. Moreover, there was nothing unconscionable about the contract since there is no evidence that Team Biondi had no "meaningful choice in the acceptance of the challenged provision," or that its terms "grossly favored to one side and to which the disfavored part does not assent." *See Harbison v. Louisiana-Pac. Corp.*, 602 F. App'x 884, 886–87 (3d Cir. 2015).

### B. Tort Claims

Next, we turn to Team Biondi's tort claims of fraud, fraudulent nondisclosure, and intentional or negligent misrepresentation. All three claims share essentially the same elements under Pennsylvania law: "(1) a misrepresentation or a concealment; (2) which is material to the transaction at hand; (3) made with the knowledge of its falsity or recklessness as to whether it is true or false (for a misrepresentation), or calculated to deceive (for a concealment); (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) a resulting injury proximately caused by such reliance." *Glime v. Susquehanna Valley Pre-Owned Sales & Serv.*, No. 4:21-CV-01499, 2022 WL 17853207, at *4 (M.D.

Pa. Dec. 22, 2022) (citing *SodexoMAGIC, LLC v. Drexel University*, 24 F.4th 183, 205 (3d Cir. 2022)); *see also Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999) (stating elements for negligent misrepresentation).

In plain language, these three causes of action break down into two categories: (1) Navistar allegedly told Team Biondi certain information about the Trucks that was not true (fraud and intentional/negligent misrepresentation); and (2) Navistar allegedly did not tell Team Biondi certain information about the Trucks that it had an obligation to disclose (fraudulent nondisclosure). According to Team Biondi, but for Navistar's sharing of rosy details and withholding of troublesome details about the Trucks it would not have bought them. (Doc. 57).  As to Navistar's alleged affirmative misrepresentations, Team Biondi claims it relied primarily on three:

> (1)  Navistar would perform "Diamond Renewed" inspection to address previous engine problems with the Trucks and provide a two-year Service Contract;
>
> (2)  The Trucks would provide "good solid service," "a new truck experience," and "improved uptime"; and
>
> (3)  The MaxxForce engine complied with EPA regulations.

(*See* Docs. 54-11 & 54-12, Depositions of Michael Biondi). As to the nondisclosures, Team Biondi claims it "was never informed that the EGR system [Mr. Biondi] was purchasing failed 100% of the time, nor was he

informed the physics behind the EGR system was unsound, nor was he informed that the testing of the EGR emission system was not in keeping with the industry standard for testing."[8]

Want of sufficient evidence supporting these alleged representations and nondisclosures aside, the economic loss doctrine bars Team Biondi's tort claims.[9] The economic loss doctrine, a doctrine well-established in Pennsylvania, *see Excavation Techs., Inc. v. Columbia Gas Co. of Pennsylvania*, 985 A.2d 840, 842–43 (Pa. 2009), "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract," *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). "[I]ntentional misrepresentation claims are generally preempted by the economic loss rule," as are negligent misrepresentation claims. *Whitaker v. Herr Foods, Inc.*, 198 F.Supp.3d 476, 490–91 (E.D. Pa. 2016) (citations omitted). The economic loss doctrine similarly bars claims based on fraudulent concealment (or nondisclosure). *Werwinski v. Ford*

---

[8] (Doc. 57 at 7–8). These facts, which Team Biondi claims it was entitled to have affirmatively disclosed to it prior to buying the used Trucks from Navistar, come from trial testimony of Navistar's management at a state trial in Madison County, Tennessee, (*see* Doc. 57 at 3–6). Team Biondi also seems to claim it was entitled to disclosure of the trial testimony itself prior to its purchases, (*id.* at 6).

[9] Team Biondi, again, offers no response to Navistar's motion for summary judgment of the tort claims on this ground.

*Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002), *abrogated on other grounds by Earl v. NVR, Inc.*, 990 F.3d 310 (3d Cir. 2021).[10]

However, there is an exception where "a defendant committed fraud to induce another to enter a contract." *Id.* at 490 (citing *Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F.Supp.2d 643, 658 (E.D. Pa. 2002)). Even so, a claim of fraudulent misrepresentation "remain[s] viable only when a party makes a representation extraneous to the contract, but not when the representations concern the subject matter of the contract or the party's

---

[10] This court denied Navistar's motion for judgment on the pleadings based in part on the Third Circuit's recent decision in *Earl*, but the court invited Navistar to reassert its argument in a summary judgment motion to address *Earl*. (Doc. 43). Navistar has done so in its motion for summary judgment and has distinguished this case from *Earl* to the court's satisfaction. (*See* Doc. 55 at 22–24). *Earl* overruled *Werwinski*'s holding that the economic loss doctrine precludes a plaintiff's claim for economic damages under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") because, since *Werwinski*, the Supreme Court of Pennsylvania and two intermediate Pennsylvania courts had found the economic loss doctrine "gives way if there is a statutory basis to impose liability for economic losses," such as when a statute like the UTPCPL "provide[s] a private cause of action for economic losses." *Earl*, 990 F.3d at 313 (citing *Excavation Techs.*, 985 A.2d at 842–43, *Knight v. Springfield Hyundai*, 81 A.3d 940 (Pa. Super. Ct. 2013), and *Dixon v. Nw. Mut.*, 146 A.3d 780 (Pa. Super. Ct. 2016)); *see also id.* at 311 ("Rulings by Pennsylvania appellate courts subsequent to *Werwinski*, however, have cast substantial doubt upon the continuing validity *of our prior interpretation of the UTPCPL*.") (emphasis added). Thus, *Werwinski*'s holding that the economic loss doctrine may bar common law tort claims based on fraud, misrepresentation, or concealment—as opposed to statutory causes of action like the UTPCPL—remains undisturbed by *Earl* and controls this case.

performance"—*i.e.*, when the representations are "intrinsic" to the agreement. *Reilly Foam*, 206 F.Supp.2d at 678. "A fraudulent misrepresentation claim is intrinsic to the contract or warranty claim if the representations concern the specific subject matter of the contract or warranty, such as the quality or characteristics of the goods sold." *Whitaker*, 198 F.Supp.3d at 490 (internal quotations marks and citation omitted); *see also Silva v. Rite Aid Corp.*, 416 F.Supp.3d 394, 403 (M.D. Pa. 2019) (plaintiff's fraud claim fails under economic loss doctrine if misrepresentation relates solely to the quality or characteristics of the goods sold).

Here, Team Biondi asserts damages solely for economic losses flowing from the alleged malfunctioning engines in the Trucks it bought from Navistar. Team Biondi seeks the same damages on each of its tort claims against Navistar: loss of profits; downtime expenses and losses; diminished resale value of the Trucks; out-of-pocket repair expenses; fuel expenses incurred in excess of the represented amounts; towing expenses; lodging expenses; rental car expenses, including fuel for the same; unreimbursed driver downtime; loss of revenue; and other economic, financial, consequential, and incidental damages allowed by law or equity. (Doc. 4). These are purely economic losses flowing from the purchase of

the allegedly defective used Trucks. Moreover, any alleged duty Navistar had regarding the quality of the Trucks comes directly from the parties' written agreements evidenced by the Warranty Acceptance/Denial and Service Contract. Thus, the economic loss rule bars Team Biondi's fraud and misrepresentation claims absent an exception.

The court finds further that the fraudulent inducement exception to the economic loss rule is inapplicable here. As detailed above, all the alleged representations made by Navistar to Team Biondi—*e.g.,* that the Trucks would undergo the Diamond Renewed inspection, the Trucks would provide good service with improved uptime, and the Trucks' engine complied with EPA regulations—relate to the quality of the goods sold and are thus intrinsic to the parties' agreement for the sales of the Trucks encompassed by the Warranty Acceptance/Denial and Service Contract. As explained above, the fraudulent inducement exception to the economic loss doctrine is inapplicable to such representations intrinsic to the agreement; and thus, the economic loss doctrine bars Team Biondi's tort claims.

The tort claims also fail on a second, independent ground. Similar to Team Biondi's contract claims, the tort claims dissolve under the legally preclusive effect of the "as is" sales of the Trucks and the conspicuous

disclaimer of warranties and parol representations in the Service Contract. This is where the parol evidence rule comes in again. As stated, under Pennsylvania law, the parol evidence rule precludes evidence of any prior agreement or contemporaneous oral agreement that contradicts the express terms of a writing intended by the parties as a final expression or their agreement. 13 Pa.C.S.A. §2202. Moreover, as the Third Circuit has explained, when the contract "includes a fraud-insulating term," *SodexoMAGIC*, 24 F.4th at 214, such as a disclaimer that states the representations in the contract "are the only representations made," *id.* (citing *1726 Cherry St. P'ship by 1726 Cherry St. Corp. v. Bell Atl. Properties, Inc.*, 653 A.2d 663, 670 (Pa. Super. Ct. 1995)),

> that extends the reach of the parol evidence rule. In that circumstance, the parol evidence rule prevents the use of extrinsic evidence to vary the fraud-insulating term. And without such evidence, it is virtually impossible to establish the justifiable-reliance element needed for a fraud claim. As the Pennsylvania Supreme Court has explained for integrated contracts, "due to the parol evidence rule's operation, a party cannot be said to have justifiably relied on prior representations that he has superseded and disclaimed."

*Id.* (quoting *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 207 (Pa. 2007)).

Here, is undisputed that the "Warranty Acceptance/Denial" signed by Mr. Biondi together with the Service Contract constitutes the final expressions of Team Biondi's and Navistar's agreements for the purchases

- 24 -

of the Trucks. Team Biondi purchased the Trucks "as is" with an additional, optional warranty obligating Navistar to repair or replace covered parts for a period of time (*i.e.*, the Service Contract). The Service Contract explicitly and conspicuously disclaimed all other warranties, express or implied, and "all other representations to the user/purchaser" of the Trucks—this is the "fraud-insulating term," as the Third Circuit puts it. Accordingly, under the parol evidence rule, evidence of a prior representation or concealment cannot come in if it contradicts the express terms of Team Biondi's and Navistar's agreement. The alleged representations from Navistar—whether they were from unnamed advertisements in trade papers or spoken directly to Mr. Biondi—that were purportedly relied on by Team Biondi in purchasing the Trucks contradict the express terms of the Service Contract because they fall under the explicitly disclaimed category of "all other representations to the user/purchaser" apart from the promise to "repair or replace" the covered parts therein. Therefore, Team Biondi cannot establish the justifiable reliance element of its claims for fraud, fraudulent nondisclosure, and intentional or negligent misrepresentation.

This makes sense, because Team Biondi cannot be said to have justifiably relied on any representations from Navistar regarding the quality or reliability of the Trucks when those Trucks were sold "as is," and all

alleged representations were explicitly disclaimed by the Service Contract. Put simply, "a party cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations." *Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2002).

Therefore, Team Biondi's tort claims fail on the two, independent grounds of (1) the economic loss doctrine and (2) the parol evidence rule precluding justifiable reliance, which is needed to prove all three of Team Biondi's tort claims. And thus, summary judgment is appropriate on these claims.

## IV.   CONCLUSION

In light of the foregoing, the court will **GRANT** Navistar's motion for summary judgment and dismiss Team Biondi's claims with prejudice, **DISMISS as moot** Navistar's motion to exclude testimony of Team Biondi's expert, and **DISMISS** "Philadelphia Used Truck Center" and the two Doe defendants from this case with prejudice. An appropriate order follows.

*S/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 28, 2023**
17-2294-02

- 26 -